UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05CV-393-H

AMANDA MATTINGLY                                                                                      PLAINTIFF

V.

UNIVERSITY OF LOUISVILLE, et al.                                                                DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Amanda Mattingly ("Mattingly"), was an undergraduate student at the University of Louisville ("U of L"). She attended a study abroad program offered by U of L in Portugal in the summer of 2004. This case arises from unfortunate events that culminated in her rape by a Portuguese man. She claims that neither U of L nor the professor who led the trip took appropriate measures to prevent the rape or to respond to it. She has filed suit against U of L and the professor, Shawn Parkhurst ("Parkhurst"), for a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX") and for state law claims of negligence and breach of an implied contract of security. Discovery is now complete and the Defendants have moved for summary judgment.

This case raises a question that no other court has confronted directly: whether a student has a private remedy under Title IX against a funding entity arising from sexual assault by a person unaffiliated with the funding entity. The Court concludes that in our circumstances it does not.

I.

Mattingly attended U of L from August of 2001 until she graduated with a degree in anthropology in December of 2004. While a student, Mattingly submitted an application to participate in a study abroad program in Lisbon, Portugal in the summer of 2004. U of L sponsored the program and Parkhurst, an assistant professor of anthropology, supervised it. Mattingly was accepted into the program and decided to participate. That spring she attended an orientation session conducted by Parkhurst. Parkhurst advised the students to travel in groups and to avoid wearing revealing clothing. But he did not offer any advise about the dangers of sexual abuse. Mattingly and the other students in the program arrived in Portugal on July 1, 2004. The students lived together in a dormitory in Lisbon.

On July 4, 2004, Mattingly and three of her classmates went to a restaurant near the dormitory for dinner. There, they met a Portuguese man named Pedro. Pedro did not speak English so instead, he spoke to the girls in Portuguese with the help of one of the girls who was fluent in the language. The girls chatted with Pedro at their table. Later that evening, a waiter in the restaurant asked the girls to accompany him and Pedro to a bar in the neighborhood to watch a soccer game that was being televised. The girls agreed to go.

After the game ended, Pedro offered to drive Mattingly back to the dorms. Mattingly left her friends and she got into Pedro's car. After Pedro dropped his friends off, Mattingly was left alone in the car with him. Pedro drove to a secluded area and he raped her.

Mattingly told Parkhurst about the rape the next day, on July 5, 2004. Parkhurst did not immediately take her to the hospital or to the police. Instead, Parkhurst took her to the hospital two days later, on July 7, after Mattingly complained of continued cramping and bleeding. There, she saw a gynecologist and a psychologist. On July 9, Mattingly spoke to Parkhurst

about the rape again. Parkhurst questioned her sincerity and wondered whether the rape happened at all. Nevertheless, a few days later he helped her to report the assault to the Portuguese police. On July 23, Mattingly returned to the United States before the end of the program. This lawsuit followed.

II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In Count I, Mattingly asserts a claim for monetary damages under Title IX, alleging that the University showed deliberate indifference to the alleged sexual assault.[1] Generally, Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). No one disputes that U of L is a recipient of federal education funding for the purposes of Title IX. No one disputes that a failure to take prompt and appropriate action to a sexual assault constitutes "discrimination." *See Soper v. Hoben*, 195 F.3d 845, 854-55 (6th Cir. 1999). The issue in this case is whether a university's failure to respond to a single instance of sexual assault by a third

---

[1] Mattingly also asserted a Title IX claim against Parkhurst. But both parties now agree that the claim against Parkhurst must be dismissed because individuals cannot be held personally liable under Title IX. *Cf. Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) ("only recipients of federal funds may be liable for damages under Title IX") (citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999)).

party, who is neither a student nor a teacher at the university, can support a private suit for money damages.

Title IX does not explicitly provide a private remedy; therefore, courts have provided an implied private right of action for monetary damages. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280, 284 (1998). Defining the scope of that right of action, the Supreme Court has held that sexual harassment of a student in a federally funded educational program, if perpetrated by a teacher or other employee of the funding recipient, can render the recipient liable for damages under Title IX. *See Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 76 (1992). The Supreme Court has also held that student-on-student harassment may support a claim for monetary damages. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999). In these instances, the institution may be both discriminating and, by its lack of response, denying participation. Either may rise to a Title IX violation. However, non-university affiliated harassment presents a whole new set of issues.

In Mattingly's view, Title IX's "unmistakable focus on the benefited class," *Cannon v. University of Chicago*, 441 U.S. 677, 691 (1979), compels the conclusion that the statute works to protect students from all forms of sexual abuse. The Department of Education's own guidance manual, according to Mattingly, buttresses this interpretation. The manual states that a school's failure to respond to harassment by third parties who are not affiliated with the school may violate Title IX:

> [S]exually harassing conduct by third parties, who are not themselves employees or students at the school (e.g., a visiting speaker or members of a visiting athletic team), may also be of a sufficiently serious nature to deny or limit a student's ability to participate in or benefit from the education program. As previously outlined in connection with peer harassment, if the school knows or should know

4

>of the harassment, the school is responsible for taking prompt and effective action to eliminate the hostile environment and prevents its recurrence.

U.S. Dep't of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, at 12 (2001) <www.ed.gov/about/offices/list/ocr/docs/shguide.pdf>.

As a general matter, Mattingly may be correct. Here, however, this Court is asked to do more than define the scope of the behavior that Title IX proscribes generally. This Court must determine whether a university's failure to respond to a single instance of harassment by an unaffiliated third party can support a private suit for money damages. The Supreme Court has repeatedly highlighted the distinction between the rights created by Title IX and the remedies therein provided. *See*, *e.g.*, *Gebser* 524 U.S. at 283 ("In this case, . . . petitioners seek not just to establish a Title IX violation but to recover damages . . ."); *Davis*, 526 U.S. at 639 ("we are asked to do more than define the scope of the behavior that Title IX proscribes. We must determine whether a district's failure to respond to student-on-student harassment in its schools can support a private suit for money damages.").

No federal court has addressed whether a funding recipient may be liable for monetary damages under Title IX based on harassment perpetrated by a third party who is in no way affiliated with the recipient. The Supreme Court has been careful to limit the remedies available under Title IX because it views the legislation as enacted pursuant to Congress' authority under the Spending Clause. *Davis*, 526 U.S. at 640 (citations omitted). When Congress acts pursuant to its spending power, it " 'generates legislation much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.' " *Id.* (quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)). In interpreting

5

language in spending legislation, courts, therefore, " 'insist that Congress speak with a clear voice,' recognizing that 'there can, of course, be no knowing acceptance [of the terms of the putative contract] if a State is unaware of the conditions [imposed by the legislation] or is unable to ascertain what is expected of it.' " *Id.*

As applied to Title IX, the *Davis* court explained that the clear notice requirement means that funding recipients can only be liable for monetary damages where "the funding recipient engages in intentional conduct that violates the clear terms of the statute." *Id.* at 642. The court recognized that liability does not turn on the application of agency principles to impute liability to schools for the acts of its teachers. *Id.* at 643 (citing *Gebser*, 524 U.S. at 283). And the Court extended damages liability to incorporate student-on-student harassment where the funding recipient acts with deliberate indifference to known acts of harassment. *Id.* at 642. However, in so doing the court placed a firm conceptual limitation on the contours of damages liability under Title IX. The court noted that to be liable for damages, the funding recipient must have at least some control over the alleged harassment:

> [B]oth the "deliberate indifference" standard and the language of Title IX narrowly circumscribe the set of parties whose known acts of sexual harassment can trigger some duty to respond on the part of funding recipients. Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action.

*Id.* Accordingly, the court concluded that "[t]hese factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645.

The alleged harasser in this case, Pedro, was not a student at U of L or an employee. He

was a resident of Portugal whose only connection to the school was that he ate dinner at a restaurant near U of L's dormitory.  He was not subject to the university's rules or disciplinary procedures; and therefore, unlike the university's own students, Pedro could not be disciplined by U of L in any way.  *Cf. Davis*, 526 U.S. at 646 ("On more than one occasion, this Court has recognized the importance of school officials' 'comprehensive authority . . . , consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.' ") (quoting *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 507 (1969)). Based on the Supreme Court's guidance in *Davis*, this Court concludes that in these circumstances U of L cannot be liable for monetary damages under Title IX.

Even if harassment by an unaffiliated third party could support a Title IX claim for monetary damages, no reasonable juror could find U of L liable in this case.  In Title IX actions, a funding recipient, like U of L, can be liable only if it receives actual notice of harassment and responds to it with "deliberate indifference."  *See Gebser*, 54 U.S. at 292-93.  Here, there is no evidence that U of L acted with deliberate indifference.  U of L had no control over the alleged harasser, little, if any control over the context in which the harassment occurred and no forewarning of the acts.  The precautions U of L took prior to the trip were not "clearly unreasonable in light of the known circumstances."  *Davis*, 526 U.S. at 648 (defining deliberate indifference).  Parkhurst held at least one orientation session in which he cautioned students to travel in groups and to avoid revealing clothing and U of L housed the students in private dormitories with locking doors.  Nor is there evidence that U of L's response to the sexual assault was clearly unreasonable.  Typically, a university could satisfy its Title IX obligations by taking remedial action to prevent continued harassment, thereby assuring a student's access to

and participation in university activities. But here U of L had no authority to take remedial action. It had no authority to punish the perpetrator or to control his behavior in any way. Although Parkhurst probably should have taken Mattingly to the hospital and to the police more quickly, his delay is insufficient by itself to constitute deliberate indifference.

The situation could be different if a third-party harasser like Pedro assaulted U of L students on more than one occasion. In that situation, a university would have considerably more control over the context in which the alleged harassment occurs. Where a university knows of repeated instances of harassment, it has the ability and the duty to take added safety precautions and to assert strict control over the behavior of its own students in order to prevent further abuse in the future. The Court expresses no opinion about a university's liability in that situation. What the Court instead asserts is that, in these circumstances, a single instance of sexual harassment perpetrated by a third party, like Pedro, may not support a claim for monetary damages under Title IX.

### III.

In Count II, Mattingly asserts a claim under state law that U of L and Parkhurst acted negligently by failing to take reasonable measures to protect their students. The Defendants, however, assert that this claim is barred by the doctrine of sovereign immunity. Under Kentucky law, the state government and its agencies are immune from liability for the negligent performance of a public function. *See, e.g.*, Yanero v. Davis, 65 S.W.3d 510, 519 (Ky. 2001) ("a state agency is entitled to immunity from tort liability to the extent that it is performing a governmental, as opposed to a proprietary, function"). Moreover, an officer sued in his official capacity receives the same kind of immunity that protects the state or governmental agency for

which he or she works. *Id.* 521-22.

In this case, there is no dispute that U of L qualifies as a Kentucky state agency for the purposes of immunity. *See Martin v. University of Louisville*, 541 F.2d 1171, 1174-75 (6th Cir. 1976). Accordingly, U of L and Parkhurst, an employee of U of L, are immune from liability for the negligent performance of a public function. The protection of students in a public university is clearly a public function. Therefore, Mattingly's claims of negligence against U of L and against Parkhurst in his official capacity are barred by sovereign immunity.

Mattingly does not appear to assert a claim of negligence against Parkhurst in his personal capacity. But even if there is a claim against Parkhurst in his personal capacity, Parkhurst is entitled to qualified immunity on that claim. "Qualified official immunity applies to the negligent performance by a public officer ... of (1) discretionary acts or functions ...; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* at 522. In this case, Parkhurst's efforts to protect his students from abuse were discretionary acts. *M.W. v. Madison Cty. Bd. of Educ.*, 262 F. Supp. 2d 737, 747 (E.D. Ky. 2003) (official acts by school staff relating to safety and discipline within schools are "inherently discretionary"). There is no evidence that he acted in bad faith. And because he was the director of the study abroad program, the actions he took to protect the students from harm were clearly within the scope of his authority. Therefore, he is immune from suit for negligence in this Court. The only court competent to adjudicate Mattingly's claim against Parkhurst in his personal capacity is the Kentucky Board of Claims. See Ky. Rev. Stat. § 44.073.

IV.

In Count III, Mattingly alleges that U of L's failure to protect Mattingly constitutes

breach of contract. However, generally, state agencies, like U of L, are immune from suit for breach of contract. *Commonwealth v. Whitworth*, 74 S.W.3d 695, 699 (Ky. 2002) (absent waiver, the state is immune from suit on an oral contract). Ky. Rev. Stat. § 45A.245(1) provides a limited waiver of sovereign immunity for claims related to lawfully authorized written contracts. However, that provision appears to be inapplicable because Mattingly's claim is based on an implied contract, not an express, written one. Moreover, even if the contract in this case were covered by section 45A.245(1), that provision confers exclusive jurisdiction in the Franklin Circuit Court. Therefore, in either case, U of L is immune from suit in this Court.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record